**And IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **Michael M.,**[1] | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **No. 23 C 02856** |
| **v.** | ) | |
| | ) | **Magistrate Judge Laura K. McNally** |
| **Frank Bisignano,** | ) | |
| **Commissioner of Social Security,**[2] | ) | |
| | ) | |
| **Defendant.** | ) | |

**ORDER**[3]

Before the Court are Plaintiff Michael M.'s brief in support of reversing the

decision of the Commissioner of Social Security (Dkt. 21: Pl.'s Brief in Supp. of Rev. of

Decision, "Pl. Brief"), Defendant's motion for summary judgment and memorandum in

support (Dkt. 27: Def. Mot. for Summ. J.; Dkt. 28: Def. Mem. in Supp. of Mot. for Summ.

J., "Resp."), and Plaintiff's reply (Dkt. 31: Reply).

---

[1] The Court in this order is referring to Plaintiff by his first name and first initial of his last name in compliance with Internal Operating Procedure No. 22 of this Court.

[2] The Court substitutes Frank Bisignano for his predecessor(s) as the proper defendant in this action pursuant to Federal Rule of Civil Procedure 25(d) (a public officer's successor is automatically substituted as a party).

[3] On May 22, 2023, by consent of the parties and pursuant to 28 U.S.C. § 636(c) and Local Rule 73.1, this case was reassigned to the magistrate judge for all proceedings, including entry of final judgment. (Dkt. 8.)

## I. Procedural History

Plaintiff applied for disability insurance benefits on December 31, 2020, alleging disability from July 28, 2020. (R. 34.) His date last insured was December 31, 2025. (R. 35.) Plaintiff's claim was initially denied on May 20, 2021 and upon reconsideration on July 2, 2021. (R. 34.) Plaintiff appeared with counsel and testified before the ALJ at a telephone hearing on February 10, 2022. (*Id*.) On March 16, 2022, the ALJ issued a decision finding Plaintiff not disabled. (R. 48.) Plaintiff subsequently appealed. The Appeals Council subsequently denied review of the opinion (R. 1), making the ALJ's decision the final decision of the Commissioner. *Bertaud v. O'Malley*, 88 F.4th 1242, 1244 (7th Cir. 2023).[4] After considering the briefs and evidence, the Court denies Plaintiff's request for remand and grants the Commissioner's motion to affirm the ALJ's decision.

## II. ALJ Decision

The ALJ applied the Social Security Administration's five-step sequential evaluation process to Plaintiff's claims. At Step One, the ALJ found that Plaintiff had not engaged in substantial gainful activity since July 28, 2020. (R. 36.) At Step Two, the ALJ determined that Plaintiff had the severe impairments of diabetes mellitus, diabetic neuropathy, lumbar degenerative disc disease, lumbar radiculopathy, and anxiety. (R. 37.) The ALJ found that none of Plaintiff's impairments met or equaled a Listing at Step Three. (R. 37-39.)

Before Step Four, the ALJ determined that Plaintiff had the residual functional capacity ("RFC") to perform light work and that Plaintiff was further limited such that he:

> can occasionally climb ramps, stairs, ladders, ropes, or scaffolds. The claimant can frequently balance occasionally stoop, kneel, crouch and crawl. The claimant can reach frequently bilaterally in all directions. The claimant can understand, remember, and carry out simple instructions; tolerate occasional changes in a routine work setting; and tolerate occasional interactions with supervisors or coworkers with no interaction with the public.

(R. 39-40.)

At Step Four, the ALJ found that Plaintiff was unable to perform his past work as a construction worker and unit assembler. (R. 47.) The ALJ found at Step Five that there were other jobs that existed in significant numbers in the national economy that Plaintiff could perform based on his RFC. (R. 47-48.) The ALJ specifically found that Plaintiff could perform the work of a mail clerk, inspector hand packager, or routing clerk. (R. 48.) As a result, the ALJ found that Plaintiff was not disabled. (*Id*.)

## III. Legal Standard

Under the Act, a person is disabled if he has an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(a).

3

The Court does not "merely rubber stamp the ALJ's decision on judicial review." *Prill v. Kijakazi*, 23 F.4th 738, 746 (7th Cir. 2022). An ALJ's decision will be affirmed if it is supported by "substantial evidence," which means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019). "[T]he threshold for such evidentiary sufficiency is not high." *Id*. ALJs are "subject to only the most minimal of articulation requirements" and "need not address every piece or category of evidence identified by a claimant, fully summarize the record, or cite support for every proposition or chain of reasoning." *Warnell v. O'Malley*, 97 F.4th 1050, 1053 (7th Cir. 2024). "All we require is that ALJs provide an explanation for how the evidence leads to their conclusions that is sufficient to allow us, as a reviewing court, to assess the validity of the agency's ultimate findings and afford the appellant meaningful judicial review." *Id*. at 1054.

The Seventh Circuit added that "[a]t times, we have put this in the shorthand terms of saying an ALJ needs to provide a 'logical bridge from the evidence to his conclusion.'" *Id*. (citation omitted). The Seventh Circuit further has clarified that district courts, on review of ALJ decisions in Social Security appeals, are subject to a similar minimal articulation requirement: "A district (or magistrate) judge need only supply the parties . . . with enough information to follow the material reasoning underpinning a decision." *Morales v. O'Malley*, 103 F.4th 469, 471 (7th Cir. 2024). The district court's review of the ALJ's opinion "will not reweigh the evidence, resolve debatable

4

evidentiary conflicts, determine credibility, or substitute its judgment for the ALJ's determination." *Chavez v. O'Malley*, 96 F.4th 1016, 1021 (7th Cir. 2024) (internal quotations omitted).

## IV.    Analysis

Plaintiff makes three arguments in favor of remand. He contends, (1) that the ALJ did not support the RFC with substantial evidence; (2) that the ALJ erred in rejecting the opinion of state agency doctor Sai Nimmagadda, M.D., and (3) that the ALJ erred in his evaluation of Plaintiff's subjective symptoms. After reviewing the briefs and record evidence, this Court ultimately finds that the ALJ supported his conclusion with substantial evidence as required and Plaintiff's arguments are unavailing.

### A.    Substantial Evidence Supports the ALJ's Opinion

The ALJ weighed objective and subjective evidence before determining Plaintiff could perform light work with additional manipulative and postural limitations. In doing so, the ALJ addressed evidence both favorable to Plaintiff's claims and that which undermined them. The ALJ then explained that the longitudinal evidence of record did not suggest Plaintiff was totally disabled as he alleged. Specifically, the ALJ considered that:

- Multiple treatment notes described Plaintiff as in "no acute distress" without overt signs of pain behavior, psychomotor agitation and lurching or unpredictable gait pattern. (R. 42);

- Plaintiff's symptoms fluctuated but were generally controlled with conservative treatment such as medication. (R. 42);

- Evidence of intermittent musculoskeletal abnormalities such as decreased lumbar range of motion and positive straight leg testing was interspersed with unremarkable findings including normal range of motion. (R. 42);

- Non-focal neurological examinations (revealing no specific deficit in brain function) showed intact sensation over bilateral feet and toes, grossly normal coordination and gait, and normal strength in bilateral lower extremities. (R. 42.);

- Plaintiff had a lumbar MRI in October 2020 that showed degenerative changes with severe spinal canal stenosis without evidence of nerve root involvement. Imaging showed no evidence of longitudinal worsening of his condition. (R. 42.);

- There was no indication in the medical records that Plaintiff's subjective complaints or clinical presentation warranted further diagnostic testing. (R. 43.);

- Plaintiff was not considered a candidate for opioid pain medication. (R. 43.);

- Although an epidural injection gave him relief from his back pain for eight weeks, he was hesitant to have another. (R. 43.);

- Plaintiff received a prescription to use a cane "as needed" after he requested one. The ALJ found no objective medical support that a cane was medically necessary "as evidenced by repeated clinical documentation of a normal gait, coordination, sensation and bilateral lower extremity strength." (R. 44.)

The ALJ also considered the medical opinions in the record. He found partially

persuasive the opinion of state agency doctor Brenda Affinati, M.D., at the initial level

that Plaintiff could perform light work with additional postural limitations. (R. 45-46.)

Based on Plaintiff's subjective complaints of neuropathy affecting his upper extremities,

the ALJ added manipulative limitations to the RFC. (R. 46.) Also based on Plaintiff's complaints, the ALJ limited him to occasional postural activities instead of the frequent limitations in the state agency opinions. (*Id.*)

The ALJ also found partially persuasive the opinion of Sai Nimmagadda, M.D., who on reconsideration concurred with almost all of Dr. Affinati's opinion except that he limited Plaintiff to four hours of standing and walking instead of six. (R. 164.) The ALJ explained that the medical evidence did not support a four-hour limitation based on "repeated evidence of intact sensation to monofilament testing over bilateral feet and toes grossly normal coordination and gait, as well as normal gait, sensation, and strength in bilateral lower extremities." (R. 46.)

Plaintiff is incorrect when he contends the ALJ impermissibly constructed a "middle ground" RFC between the initial and reconsideration state agency opinions. (Pl. Brief. at 10.) Both state agency doctors cited identical reasons as support for their RFC determinations: Plaintiff's polyneuropathy due to diabetes, mild cervical degenerative disc disease, and lumbar radiculopathy. (R. 147, 164.) After considering both each doctor's opinion, the ALJ accepted Dr. Affinati's six-hour standing and walking limitation outright and explained why he did not accept Dr. Nimmagadda's four-hour limit. He added additional postural and manipulative limitations to accommodate Plaintiff's subjective complaints. As numerous courts in this circuit have found, adding limitations beyond those opined by agency doctors shows "that the ALJ

7

gave 'reasoned consideration' to the evidence." *Langley v. O'Malley*, 2024 WL 3649021, at *4 (7th Cir. Aug. 5, 2024).

Contrary to Plaintiff's argument, the ALJ also supported with substantial evidence his decision not to include a cane in the RFC.

"A cane must be incorporated in an RFC if it is a medical necessity." *Lohn Eric E. v. Saul*, No. 20 C 2303, 2021 WL 722828, at *2 (N.D. Ill. Feb. 24, 2021). "To find that a hand-held assistive device is medically required, there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed (i.e., whether all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information." SSR 96-9p, 1996 WL 374185, at *7. Notably, [a claimant's] use of a cane is not probative of his actual need for the cane." *Stojakovic v. Colvin*, No. 14-CV-5480, 2015 WL 1966857, at *9 (N.D. Ill. May 1, 2015). In certain cases, not even a prescription for cane use will prove medical necessity. *See Henry W.G. v. Kijakazi*, No. 3:22-cv-133-MPB-CSW, 2023 WL 6349418, at *3 (S.D. Ind. Sept. 29, 2023) (affirming ALJ's finding that cane was not medically necessary, despite plaintiff's nurse practitioner having prescribed a cane, because prescription "does not make clear in which specific situations the cane was needed or the basis for the need.")

In this case, the ALJ explained his reasons for finding Plaintiff did not have a medical necessity for a cane. He pointed out that Plaintiff had requested the

8

prescription and that he was only to use it "as needed." The ALJ noted no objective

medical support for a cane based on repeated clinical documentation of normal gait,

coordination, sensation and bilateral lower extremity strength. (R. 44). Plaintiff's

argument that the evidence demonstrated medical necessity is a request for reweighing,

which the Court will not do.

In sum, the Court finds that substantial evidence supports the ALJ's

determination that Plaintiff retained the RFC to perform light work with some

additional limitations.

**B.      The ALJ's Consideration of the State Agency Opinions was not
         Erroneous**

In addition to arguing that the RFC was unsupported by substantial evidence,

Plaintiff separately contends that the ALJ erred by rejecting the part of Dr.

Nimmagadda's opinion that limited Plaintiff to four hours of standing and walking. (Pl.

Brief. at 4.). The Court finds that the ALJ adequately justified his decision to omit this

limitation.

The regulations direct the ALJ to consider the persuasiveness of medical

opinions using several factors, including supportability, consistency, relationship with

the claimant, specialization, and other factors that support or contradict a medical

opinion or prior administrative medical finding. 20 C.F.R. § 404.1520c(a), (c). The most

important factors are supportability and consistency. 20 C.F.R. § 404.1520c(a).

An ALJ must explain how he considered supportability and consistency in his decision, but he is not required to explain how he considered the other factors. 20 C.F.R. § 404.1520c(b)(2). In assessing supportability, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . . the more persuasive the medical opinions . . . will be." 20 C.F.R. § 404.1520c(c)(1). Regarding consistency, "[t]he more consistent a medical opinion . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) . . . will be." 20 C.F.R. § 404.1520c(c)(2).

In this case, the ALJ explained that both state agency opinions were generally consistent with the medical evidence available at the time they were prepared and somewhat consistent with evidence developed after reconsideration. (R. 45-46.) Specifically, he noted consistency with clinical examinations showing generally preserved musculoskeletal and neurologic functioning, with an overall conservative course of medical treatment without the need for long-term aggressive operative measures. As described above, the ALJ accepted Dr. Affinati's light RFC and then added additional limitations based on Plaintiff's subjective complaints.

As Plaintiff points out, it is true the ALJ does not specifically mention consistency when explaining why he rejected Dr. Nimmagadda's four-hour standing and walking limitation. But by reading the opinion holistically, as it must, the Court is satisfied that

10

the ALJ properly supported his decision to omit that limitation. *See Zellweger v. Saul*, 984 F.3d 1251, 1255 (7th Cir. 2021) (decisions must be read holistically; an ALJ's reasoning and citations in one portion of her decision may support conclusions in another portion of the decision).

The essence of Plaintiff's argument is that the ALJ was wrong to rely on factors such as strength, sensation, and gait when rejecting Dr. Nimmagadda's standing and walking limitation. He contends that MRI results showing severe spinal stenosis supported the limitation. But the ALJ acknowledged Plaintiff's MRI results and explained that they did not show nerve root involvement or evidence of longitudinal worsening. (R. 43.) Moreover, Dr. Affinati considered the exact same medical evidence as Dr. Nimmagadda and opined that it supported the ability to stand and walk for six hours out of an eight-hour workday. The ALJ properly considered and weighed the medical evidence before rejecting Dr. Nimmagadda's opinion. Plaintiff's argument to the contrary is again an impermissible request to reweigh.

### C.     The ALJ's Subjective Symptom Analysis was not Patently Wrong

Finally, the ALJ did not err in his determination that Plaintiff's subjective allegations were not entirely consistent with the medical evidence and other evidence in the record. The regulations instruct ALJs to consider several factors in evaluating a claimant's subjective statements, including the intensity and limiting effects of symptoms, treatment and efficacy, work during disability period, daily activities, and

11

statements inconsistent with the record. 20 C.F.R. § 404.1529; Social Security Ruling (SSR) 16-3p, 2017 WL 5180304 (Oct. 25, 2017). *Pufahl v. Bisignano*, 142 F.4th 446, 458 (7th Cir. 2025). The Court "will overturn the ALJ's evaluation of a claimant's subjective symptoms only if it is patently wrong, which means that the decision lacks any explanation or support." *Id.* (internal citations and quotations omitted). Not all the ALJ's reasons must be valid in a subjective symptom analysis, "as long as *enough* of them are." *Halsell v. Astrue*, 357 F. App'x 717, 722 (7th Cir. 2009) (emphasis in original).

While acknowledging Plaintiff's continuing complaints of low back pain and neuropathy, the ALJ explained that a number of factors that did not support Plaintiff's subjective allegations of total disability. (R. 41.)

First, the ALJ discussed objective evidence showing that multiple treatment providers routinely found Plaintiff in no acute distress with no overt signs of pain behavior, psychomotor agitation and lurching or unpredictable gait patterns. (*Id.*) He evaluated evidence that both supported Plaintiff's claims – such as a reduced range of motion in his lower back and positive straight-leg raising – and evidence that cast doubt on the severity of his symptoms, such as medical records that demonstrated full range of motion. (R. 42.) The ALJ recognized that Plaintiff's MRI showed severe spinal stenosis but noted that it did not indicate nerve root involvement or evidence of longitudinal worsening of his condition. (R. 43.)

Additionally, the ALJ noted that Plaintiff's symptoms were generally controlled with conservative treatment. (*Id.*) He found it telling that Plaintiff hesitated to have a second epidural injection even though the first one provided pain relief, which the ALJ found inconsistent with his complaints of the severity of his symptoms. (R. 43.) Plaintiff argues the ALJ erred by making a negative inference that his pain was not as severe as he alleged because he did not pursue additional epidural injections. (Pl. Brief at 13-14.) The ALJ asked Plaintiff about his back injection at the hearing and Plaintiff testified that it did not work. (R. 71.) In his brief, however, Plaintiff argues that the ALJ did not consider evidence from the medical record that the injection did work, but he was hesitant to have another because he passed out after the first one. (Pl. Brief at 14.) But the ALJ specifically noted Plaintiff's hesitance in his opinion, which shows that he considered Plaintiff's reasoning before making a negative inference. All the law requires is that the ALJ considers a claimant's reasons for not pursuing treatment, which the ALJ did here. SSR 16-3p.

Finally, the ALJ also considered Plaintiff's daily activities in support of his finding that Plaintiff was not as disabled as he alleged. He noted that Plaintiff could drive, shop in stores, prepare basic meals, and care for his personal needs, as well as manage his finances and medical treatment. (R. 44.) While the ALJ recognized that Plaintiff's ability to engage in daily activities was not dispositive of the question of

13

disability, he explained that it contributed to a reasonable question as to whether Plaintiff was as limited as he alleged. (*Id.*)

Not all of an ALJ's reasons for his subjective symptom evaluation have to be adequate as long as some of them are. *Tutwiler v. Kijakazi*, 87 F.4th 853, 859 (7th Cir. 2023) (Although the ALJ might have erred in his analysis of some factors, enough of them had adequate supporting evidence for this court to uphold his credibility determination.) In this case, the Court finds the ALJ has more than met that burden.

## CONCLUSION

For the reasons explained above, the Court grants the Commissioner's motion for summary judgement (Dkt. 27) and denies Plaintiff's memorandum in support of remand (Dkt. 21.)

**SO ORDERED.**

ENTER:

_Laura K. McNally_

**LAURA K. MCNALLY**
**United States Magistrate Judge**

**DATED: March 6, 2026**

14